No. 2460014 United States v. Ralph Leon Stinson Jr. and Eleanor Stinson. We will hear first from Mr. Weber. Good afternoon, Your Honors, and may it please the Court. Ms. Stinson is before you this afternoon asking you to reverse the garnishment order of the District Court. The District Court found that the debtor, that is, Ellen Stinson's husband, Leon, had an interest in Ellen's individual retirement accounts. This finding was based on their marriage alone. Under Mississippi law, a case called Ferguson v. Ferguson, a 1994 case, clearly states that in Mississippi, a spouse does not have a right or interest in property by virtue of marriage alone. And this Court found that in a United States v. Seymour, it's a 2008 case. Therefore, the District Court abused its discretion because the order is based on an erroneous determination of Mississippi law, that Leon, based on his marriage alone, has a substantial non-exempt interest in Ellen's individual retirement accounts. This Court knows that the standard of review for garnishment orders is an abuse of discretion. The Court abuses its discretion if its conclusions are based on an erroneous determination of the law, and determinations of law are reviewed de novo. Was this retirement account money that she had earned during the marriage? It was not determined at the lower court. She had what the government chose to seek to garnish was three accounts titled in her name alone. Three individual retirement accounts. The accounts are part of the evidence submitted at the District Court level. The transfer on death beneficiary was Ellen's daughter, not Leon Stenson. And so the government, so we argued at the lower court level that Leon had no right, title, or interest in that property under Mississippi law based on his marriage alone. But she conceded she didn't have any evidence of her contributions to the account or the source of the funds. Your Honor, there was no evidence presented. But the District Court asked for evidence, right? The District Court asked for that evidence, but there was no evidence that Leon contributed to those accounts. There was no evidence that he provided any money or who funded or how those accounts were funded. And so we took issue with the fact that the government or the judge tried to place the burden on Ellen to show that it was separate property. And that's, and the government argues today that it's marital property. And the concept of marital property only arises in terms of a divorce proceeding in Mississippi when at the time of divorce, that's the case of Henley that they cite, that it's presumed that it's marital property. But under equitable distribution, which Mississippi law follows, it's a dual classification system. So unless and until there's a decree of divorce, which this Court recognized in Seymour, what is the second system? And that reverts back to the old title system. So for her to maintain ownership of this property, she would have to stay married to her husband who's in jail? I'm trying to understand your question, Your Honor. Well, if she divorces him, she loses half the property. Well, if she divorces, at the time of divorce, if there's a divorce proceeding under Mississippi law, then the chancellor would, number one, determine that a divorce is granted and then turn to a division of the property. And at that point, the judge would look and determine and categorize that property. That's where the Ferguson factors kick in. That's where the Ferguson factors kick in. And that's what practitioners in Mississippi know about Ferguson, these factors that apply. But Ferguson also— So the Mandatory Victims Restitution Act says that the federal government can basically go after all property or rights to property of the person being fined for restitution, right? Yes, Your Honor. So what is Mr. Stinson's right to the property in Ms. Stinson's IRA account? Well, the MVRA is, I guess— It's federal law. I get that. It's federal law. And we're traveling under state law. And then we look to the Federal Debt Collection Procedures Act that looks to state law to determine whether or not Leon has a substantial non-exempt interest in Ellen's property. But that's what I'm getting at. What is his right to marital property? We're not talking about divorce. But right now, as they sit married— Right now, married couples, it's individual property. And that's what Ferguson goes on to say is that— It's the title regime. It's the title regime. And the individual who owns the property has the right of alienation, dissent, and distribution. And so, to answer your question, Leon would have no right to that property. Well, I guess another way to ask the question is, is garnishment different? I see garnishment as no different than a debt collector trying to collect the debt of, in this case, Leon or the cases that we invited the court's attention to from the First Circuit applying Maine law, Maine being a state that uses equitable distribution. Colorado recognized that the spouse, in this case, Leon, would have an inquit right to the property, an inquit right being maybe a presumptive right or a right that may develop, in this case, at the time of divorce. But— The government makes the bundle of sticks argument. Leon doesn't have a stick in this bundle. He doesn't have any stick at all. No stick in this bundle because, going back to this dual classification system, we cannot— It's either joint or separate when we go back to the title system. It's either owned jointly where Leon would have an interest and under—  That's Seymour. But now we're looking at separate property, individual property. And so if we apply the reasoning in Seymour, Seymour ending with Mr. Seymour is claiming or equitable or the spouse, in that case, Mrs. Seymour, is claiming a percentage or a part of that joint property based on marriage and equity alone. And this court rejected that argument. And so here we are with Mrs. Stenson's individual retirement account applying the same logic and reasoning. Leon is here, and the government, stepping into Leon's shoes, is now claiming that they have a right to this property based on marriage and equity alone, and that's not the law in Mississippi. But what if she got the money through an inheritance, like her parents left it to her? Would that change the— I don't think it— It wouldn't have changed the analysis, Your Honor, because we're going back to an intact marriage looking at property rights under a title system. Now, the government keeps trying to— What if he put every cent in her account? Well, the government may have an argument for fraudulent— Well, put fraudulent transfer aside. I'm assuming these accounts were set up for a long time or however they were set up. At the time that he was convicted and that sort of thing. But if he put every cent in the account, does that change the analysis? Again, as we discuss this today, in an intact marriage, does Leon have the ability to march down to the bank or to Edward Jones and withdraw that money? And the answer is no, because his name's not on the account, and there's no indication that he has any right, title, or interest in that property. Ellen is free to alienate that property. She's free to dissent that property, to designate her daughter as the transfer-on-death beneficiary. At the time of her death and her will, she can give that to whomever she pleases. I mentioned looking at other states or other courts that have analyzed equitable distribution. I've brought to the Court's attention the First Circuit that analyzed equitable distribution applying Maine law. Maine with a similar—well, exactly the same equitable distribution principles. Colorado. Oregon. And I've also brought to the Court's attention, I guess, the leading scholar on Mississippi marital property, Professor Bell from the University of Mississippi, who wrote in her 1997 Mississippi Law Journal article that in adopting equitable distribution systems, Mississippi has, in effect, chosen two marital systems that we talked about today, one being the equitable distribution at divorce, at the time of divorce, and the title system, each spouse acquiring property for themselves rather than for the marriages for all other purposes. And Mississippi did not extend this theory of equitable distribution to the intact marriage. This is clearly the case in Mississippi because that's what Ferguson said. There's no right to property by virtue of marriage alone unless and until the time of  And until that time, the individual spouse, the owner of the property, has the right to alienate and dissent and distribute that property. And we're asking the Court to apply this rule and reverse the decision of the District Court. Did Mrs. Stenson raise Ferguson, Carnathan, if I'm pronouncing that right, the line of cases from the Supreme Court? I mean, what I read in the District Court's opinion is it seems to be missing. And I mean, I wonder, was it raised and put squarely before the Court? Your Honor, I said—I believe I said there's no right to property by virtue of marriage alone over and over and over and over again, just as I'm doing this afternoon. But the judge—and I agree with you that the judge did not even address this language in Ferguson. The government continues to fail to address this language. And they're kind of bootstrapping, if you will, Hensley, which defines marital property. And that's what they—and there's a presumption at the time of divorce that property acquired or accumulated during the marriage, it's presumed to be marital property. But that's only in that second part of our classification system when we're talking about divorce. It doesn't apply—the concept of marital property does not apply retroactively or today. That's community property. That's Louisiana. That's Texas. The idea that— You're saying there's no application of this concept of marital property accumulating during the marriage pre a chance reaction for divorce. There's no, I guess, designation, if you will, of property being marital property. It could be—it's property accumulated during the marriage. At this point in the intact marriage, it's either separate or joint. Now when we start designating or describing property or giving it a title, that as marital property, that only occurs at the time of divorce. And Henley doesn't stop with the idea that all property accumulated during the marriage is marital property. Henley says that in relation to a divorce proceeding. And if you take what the government is asking, that it's marital property, property acquired or accumulated during the marriage, each party has an interest in that property, that's community property. That's Louisiana and Texas, which defines and identifies property from the beginning of the marriage, that property accumulated during the marriage, at the time of the divorce and the time of death. Mississippi doesn't identify property as marital property unless the chancellery judge issues an order of divorce and then starts looking at the property that was accumulated or acquired. How has this never come up before or has it? I don't believe it's ever come up here. I mean, this doesn't seem like a far-fetched scenario here that we've got one spouse holding title to property, yet the other spouse does something that gets property garnished or there's a restitution order or something like that. So do you have any case that supports your view that the marital property idea doesn't go beyond the divorce context? If I understand your . . . Long question. Bad question. I've never . . . in my research, preparing for this argument, preparing my briefs at the district court level, I've never seen a case like this before where the government has gone after the individual retirement accounts, a separate property of a spouse. Now, if it's a joint property, that's an easy question. There were four accounts identified by Edward Jones. One was Ralph Leon Stinson's property. We're not here discussing that. Ms. Stinson never made a claim to that property, even though it could have been property accumulated during the marriage. I mean, I guess another way to phrase my question is this idea that marital property only comes up in the event of divorce, your support is that it's never come up outside the context of divorce. Well, my support . . . the support is, going back to Ferguson and the language that just by virtue of marriage alone, you don't have a right or a title to interest in the property. So if we take that language and we apply it to this property that is found in the intact marriage, what right does the government have to go after a property held solely by Ellen Stinson to satisfy a debt of Leon? Well, they'd have every right to do it under the MVRA if he had a property interest or an interest in the property. If he had a substantial non-exempt interest and what . . . we submit to you that under Mississippi law, he does not yet have a substantial non-exempt interest in that property. Great. Counsel, you've saved time for rebuttal. We'll hear next from Mr. Baldwin on behalf of the government. Good afternoon. May it please the court, Clay Baldwin for the United States. I'd like to first turn the court to the definition of property provided by Congress. This clause, property, includes any present or future interest, whether legal or equitable, in real, personal, mixed property, tangible or intangible, vested or contingent, wherever located and however held. That is the definition provided in the Federal Debt Collection Procedures Act, and the Federal Victims Restitution Act standard, and that is property or rights to property. This court made that decision in United States v. Elashi in 2015. But you've got to deal with the idea that what the federal statutes look to is state law. First, Your Honor, the first question is what interest is conveyed by state law? And the government submits that there is a 100 percent undivided interest to both spouses. So basically under Mississippi's regime, it goes farther than community property, which would be a 50 percent interest, right? It does, Your Honor. How is that when the Supreme Court of Mississippi has said there are two regimes, marital property only comes up at divorce, otherwise it's a title system? Isn't that the consensus of the Supreme Court cases? I don't believe we can square that with the language in Hemsley, Your Honor. I would take you to the passage that says there are those who would impose title absolutes to property acquired during marriage. They would grant almost all property rights based on title or grant almost all property rights to the income earner. This ignores reality. We must recognize that married parties usually create estates together. Well, but that's in the context of divorce. And what they were doing in Ferguson was saying, or Hemsley was recognizing the housewife, a spouse that didn't earn outside income but yet contributed to the marriage. Because pre-Ferguson, pre-Hemsley, it was straight up title. So if husband had title to everything, husband took everything on divorce and wife was left, right? Yes, Your Honor. And the Supreme Court's saying, no, we're not doing that anymore. We're going to have equitable distribution at divorce. No, Your Honor. What the Supreme Court said was, we're going to vest a marital property interest in property acquired during the marriage. We're not going to separate it until divorce. And that's what this court found in Seymour. Seymour was a joint account. Seymour was a joint account. But it speaks to the fact that it says that the marital property interest cannot be divided outside of divorce. That's exactly what the government is saying. But Seymour also said, I thought, that the marital property regime has never been applied outside the context of divorce. We must turn to the fact that it is interest, Your Honor, and not vested. Look at the language of Ferguson. Ferguson specifically says, no property, no right to property vests by virtue of the marriage relationship alone. That's what this court quoted in United States v. Seymour. The government does not disagree. There's no property interest that vests by virtue of the marriage alone. But that's not the standard. The standard is, is there a property interest? And the presumption, the presumption under Hemsley v. Hemsley is that a marital property right is granted to both spouses in the marriage when that property is acquired during the marriage. That is the standard. It defies logic to say that that right that is defined by Hemsley for property acquired during the marriage exnihilates or springs forth from the ink on a divorce petition. That simply does not make any sense. The fact is that the Supreme Court of Mississippi is telling marital parties, this is how marital property is going to be created. And if you want to maintain property as separate, this is what you have to do. You mentioned inheritance, Judge Clement. That's correct. If that were the case, if this were inherited property and that property were held as separate property, the government concedes that it would not be seeking that property. But it sounds to me a lot like you're imposing a community property regime on Mississippi contra what the Supreme Court has said. I disagree, Your Honor, respectfully. How is it different than what Texas and Louisiana would do? Texas and Louisiana defines their interest by statute prior to marriage, during the marriage, and after the marriage. It's a community property regime. It's a community property regime. How did the district court properly apply Texas principles in its order denying the motion to dismiss the Garnish order or the Garnishment order? As I read it, Barry, I'm sorry, the district court cites Judge Jones's opinion. That's Texas law. In other words, the district court says that our opinion in Barry was very instructive on how the MVRA applies to Mississippi marital property. That's a Texas case applying community property principles. How is that not a legal error? It's not legal error, Your Honor, because the way the court looks at its focus on the interest in property, in Texas, the interest is defined prior to the marriage. In Mississippi, the interest is intact. It is 100% for both spouses until divorce and until a chancellor decides what that vested property interest in each spouse is going to be. It could be 50-50, 60-40, 70-30. In fact, in Mississippi, a chancellor can divide property 100% to one spouse, 0% to the other. That can occur. Can a spouse during the marriage basically contest the other spouse's alienation of an asset held in her name only based on this property interest that you talk about? No, Your Honor, but unilateral alienation is not the standard. Well, it's not the standard, but if there's a property interest in Mrs. Stinson's IRA account that Mr. Stinson holds, she decides to make the thing payable to her daughter on death. What if she liquidates the whole account and just gives it to her daughter? How do you square the idea that the government can go after 100% of that asset, but Mr. Stinson can't say, no, I don't want you to do that? Because it is an interest that he holds, Your Honor, that is future interest, perhaps a contingent interest, as admitted by the appellant in this case, an inchoate interest, which is in itself a future or contingent interest in property. They admit that Mr. Stinson has such an interest in that property. And Kraft, United States v. Kraft, Supreme Court, as well as Dry v. the United States, speaks to just how broad the property or rights to property interest is for the United States to collect on behalf of victims. And in speaking to that and defining how broadly the property or rights to property standard is in a tax context. But that is where the rule is applied based on any interest, and it is absolute that the marital interest is defined by the property acquired during the marriage. It defies logic that it would be done somewhere else. Even the case cited by the appellant Smith v. Smith, that case specifically talks about the classification of property. It's not talking about the creation of a property right at the time of divorce. It's talking about classifying property at the time of divorce. There is a remedy in Mississippi law for individual members of a marriage to maintain separate property. The burden to show that it is separate property is on the person claiming it to be separate property. Where is that in Mississippi law, though? Brown v. Brown, Your Honor, citing Neely v. Neely, that specifically looked directly to what property, how is separate property maintained, and can it be converted? The answer is yes. Through conversion by implied gift, commingling, or family use, separate property can be converted to marital property. There's no evidence of commingling. There's no evidence of gift in these accounts. There's no evidence that it was anything but separate property, correct? No, Your Honor. The evidence is that we go with the default presumption of Hemsley v. Hemsley. The burden would be on Mrs. Stinson to show that the property that she's claiming is separate property is indeed separate. It is her burden, and she did not put on any evidence at the district court level that it was separate property. In fact, the district court asked repeatedly. The appellant wants this court to jump directly to the fact that because the property is in Mrs. Stinson's name alone, it is therefore separate. That is not Mississippi law. Mississippi law conveys a marital property interest on both spouses for all property acquired during the marriage, and if someone wants to, a party to the marriage wants to claim that there is no marital property interest, it is indeed a separate property interest, they must show that by evidence. Where is your case that applies those principles outside the context of divorce? Which principles, Your Honor? What you just said, that the burden is on the spouse claiming separate property or non-marital property. I mean, I haven't seen the cases where the courts are actually parsing through this other than the divorce context. In the divorce context, Your Honor, that is where the division is occurring. I understand that, but where is this concept fleshed out in a non-divorce scenario? The concept of the right, the interest in the property, is clearly stated in Hemsley v. Hemsley and its progeny. Okay, so I get Hemsley, but I guess I'm kind of asking the same question I tried very unsuccessfully to ask counsel opposite. Where are the cases where this has been done before? Because this couldn't be the first time this came up, could it? Your Honor, it is the first time that I have found, and as we said in our brief, that this was a matter of first impression before this court to define the marital property interest. I guess what I'm getting at, though, could a bank that is owed a debt by Mr. Stinson go and garnish or attach Mrs. Stinson's account? No, Your Honor, but that's not the question here. Well, it is the question if there is a marital property interest by virtue of the marriage and accumulating during the marriage and all that sort of thing. Your Honor, I would argue no, that's not the case, and the reason is because once we identify the interest, then we go to the federal law question. Okay, so only the government can do this. Exactly. Oh, boy. Only the government can do this, and the government's power to collect in this instance is extremely broad, and that has been defined by the United States Supreme Court. You don't think that promissory notes and deeds of trust, things that banks get married couples to enter all the time, don't have language in there saying we can get any property interest or we can pursue our debts to the fullest extent, et cetera? It just seems odd to me that this general principle that governs all marriages in Mississippi really only travels under the federal statutes that allow the government to get 100 percent. Yes, Your Honor, because we transfer immediately. Once we identify that there is an interest, and there is an interest that Mississippi law conveys to both spouses, both parties to the marriage of property acquired during the marriage, that is the presumption. Once that interest is defined, we flip to federal law to determine whether the federal government can reach that interest, whether in a tax concept or a criminal monetary penalties concept, both of which reside under the property or rights to property standard, and that is extremely broad. I go to Dry versus United States. The United States Supreme Court said it is every species of right or interest. This court in Elashi, citing the United States Supreme Court in United States versus National Bank and Commerce, Congress meant to reach every interest in property. It's critical, and that is where we must diverge from the appellant, because the appellant is saying nothing occurs until divorce. That is a legal fiction at best. To the extent that anyone would make the argument that there is no marital property right until someone signs a divorce petition and submits it to a chancellor, that is a legal fiction, and the United States Supreme Court has told us to ignore those fictions and look to the substance of the right that state law confers. And it is clear that the state Supreme Court issued an interest, defined it for both spouses in the marriage. In fact, the justices at the time stated that this was the only judicially created property right in the United States. The three states that the appellant cites in his reply, Maine, Colorado, Oregon, each of them in their state statutes, Maine, Title 19A, Colorado, Title 14, Oregon, Title 11, they define specifically the property rights of spouses under the rubrics of those states. Mississippi in Title 93 does not do that. It is defined judicially under Hemsley v. Hemsley and its progeny. Ferguson discusses dividing the property, the factors of division, and it specifically speaks to the fact that it is, that is when the property right vests, but the government submits to this court that we are not concerned solely with vested property interest. The government's ability to reach the interest in property go to inchoate interest. They go to future interest, contingent interest, all of which the government can reach to prevent the abuses, similar to what the United States Supreme Court talked about in Kraft. If we allow someone to simply shield their property behind the name of their spouse, we are inviting abuse. And in this case, that's exactly what would happen. We have no idea where the money that is in that retirement account came from. There was $3 million plus in restitution ordered in this case. Money that is in retirement accounts placed by the defendant and his wife, we have no idea whether that money would have been available but for the $3 million fraud. Are we to allow them to continue to hold assets in the name of the spouse and victims go uncompensated? Why couldn't you travel under the fraudulent transfer statutes? The fraudulent transfer statutes, I would say, Your Honor, do not, first of all, totally outside the lane of where we are under the facts in this case. But there's a statute of limitations on fraudulent conveyance that requires a component to know within four years of a transfer that occurred that should not have occurred. If the money was moved into the name of the spouse early on in the marriage for whatever reason, let's say other property that exists in the marriage, whether it's homes, real estate, we could move all manner of assets into the name of one spouse alone and shield that asset if we go to the strict title rubric that the appellant maintains. It's not just the appellant. Mississippi has made that policy choice. Mississippi has not made the choice and it's absolutely clear from Hemsley v. Hemsley that it is telling marital couples that there is a marital property right that is conveyed on both spouses. It cannot be divided except in a provision of divorce. But the federal government is not interested in the division. It is only interested in the extent of the interest. And the interest — How do you define the interest, then? You assume it's 100 percent. I know it's 100 percent. How? Because the — He wouldn't — he can't assume that if they were going through a divorce, until the chancellor divides the property equitably. That's right, Your Honor. But the fact — The fact — Without going through any of it. The fact that the chancellor can divide the property 100 percent to 0 percent and under Mississippi — But it's not presumed. Under Mississippi law, only equitable division property, only marital property is subject to division. So if they are able to divide it 100 percent to 0 percent, then there must be a 100 percent interest that exists in order for that division to occur. I'm not saying 100 percent interest doesn't exist. But why does the government get the presumption that that's what they get, without a shred of proof? It's not the government's presumption, Your Honor. That's the presumption under Mississippi law. Mississippi law conveys that interest to both spouses, which is what the district court found — that there is this interest in property by both spouses that cannot be divided until a divorce. And we aren't concerned with the division of the property at divorce that would vest the property interest in one spouse or the other. The fact that in the marital property, the marital home is a great example. The chancellor can divest a marital home that is in the name of one — the husband alone, divest him of 100 percent, and convey 100 percent to the unnamed spouse. But there's a whole marital estate there as well. In other words, the chancellor may give you, one spouse, 100 percent of the home, but then the other spouse is going to get some share of the other assets. I mean, that's what Ferguson's all about. It is, Your Honor. But that does not diminish the fact that the clear ability of the Mississippi courts to divest 100 percent and convey 100 percent indicates a 100 percent interest to both spouses. And that interest may be reached by the federal government to collect under property or rights to property. And we would ask this Court to affirm. Thank you, counsel. Mr. Weber, you have five minutes. A few points very briefly. It may be of no surprise that I completely disagree with counsel opposite, especially his reading and understanding of Hemsley. And again, we have to look at the Mississippi regime. That is this dual classification system. And everything that he discusses as far as rights to marital property, it is an inchoate right. It's a potential future right. What it is is a right at the time of divorce for him to make a claim. Not a right to the property, but a right to make a claim, because as we know under Ferguson, the Ferguson factors are going to take part. So it's not a right to property. It's a right to make a claim to property. And what, and going back to the Federal Debt Collection Procedures Act, it requires that Leon Stinson have a substantial non-exempt interest. A substantial interest is akin to a vested interest, not just a right. Where's your support for that? Looking at, that's just my argument, Your Honor. Well, I mean, we have to decide what the case is. But I understand, but I'd ask the Court to think about that and think about the idea that there is a right and what's the difference between a right and a substantial right. We'll think about it. And a vested. It would be helpful if there was some support to help us think about it. And I'm trying, I'm doing my best, but we know that, you know, our argument, this argument, this explanation of Mississippi equitable distribution is recognized. The fact that the First Circuit said a non-owner spouse does not absent a divorce situation acquired by virtue of the marital relationship alone and interest in the owner spouse's property. And that's a concept and that's a part of Mississippi law that the lower court ignored and did not provide any explanation as to how Leon is entitled to 100% interest in Ellen's accounts when, by virtue of the marriage of a loan, the government claims that he's entitled to 100%. And it just doesn't fit and is inconsistent with what Mississippi law says. Thank you. Thank you, counsel. The case is submitted and that will conclude the arguments for this afternoon. We will stand in recess until tomorrow at 1 p.m.